UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 23-367(5) (JMB/JFD)

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHYU WIN JAME, )<br>)<br>Defendant. ) | **GOVERNMENT'S INITIAL POSITION ON SENTENCING** |

The Court should sentence Jame to 87 months' imprisonment and 2 years' supervised release. That sentence is sufficient, but not greater than necessary, to satisfy the 18 U.S.C. § 3553(a) factors and ensure justice is served.

## RELEVANT FACTS

The government agrees with and incorporates by reference the facts from the Offense Conduct section of the presentence report, (ECF No. 439 at ¶¶ 7-17), and the factual basis from the plea agreement. (ECF No. 374 at ¶ 2.) Jame was one of nine defendants charged with conspiring to distribute fentanyl. (ECF No. 1). Several defendants, including Jame, flew from the Twin Cities to Phoenix, Arizona, to buy multi-kilogram amounts of fentanyl pills from a supplier and shipped those pills to the Twin Cities through the U.S. Postal Service. (ECF No. 374 at ¶ 2, ECF No. 439 at ¶ 8). Jame and several co-defendants concealed the fentanyl pills inside large stuffed animals, placed

those fentanyl-laden toys inside boxes lined with dog treat bags (to prevent a drug-sniffing dog from alerting to them), and wrapped the packages to resemble birthday presents. (ECF No. 374 at ¶ 2, ECF No. 439 at ¶ 8). The pills were intended for further distribution upon arrival in the Twin Cities. (ECF No. 374 at ¶ 2, ECF No. 439 at ¶ 8).

In January and February 2023, police intercepted six of those parcels and recovered hundreds of thousands of potentially deadly fentanyl pills with a combined weight of 30.851 kilograms—over 67 pounds. (ECF No. 374 at ¶ 2, ECF No. 439 at ¶ 9). Unfortunately, police did not catch every package, meaning kilograms of pills made their way to the Twin Cities and were distributed to others. (ECF No. 374 at ¶ 2, ECF No. 439 at ¶ 10).

A grand jury indicted Jame and her co-defendants for conspiring to distribute 400 grams or more of a mixture or substance containing fentanyl in violation of 21 U.S.C. § 841(a)(1), 841(b)(1)(A), and 846. (ECF No. 1). Pursuant to a plea agreement, Jame pled guilty to Count 1 on March 12, 2025, and is now before the Court for sentencing.

## ARGUMENT

The Court should sentence Jame to 87 months' imprisonment and 2 years' supervised release. That sentence balances the nature, circumstances, and seriousness of the offense with Jame's mostly mitigating history and characteristics, will promote respect for the law, and is sufficient but not

greater than necessary to satisfy those and the other factors under 18 U.S.C. § 3553(a).

I. **LEGAL BACKGROUND**

"[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007). "[U]nder the advisory guidelines scheme, sentencing judges are required to find sentence-enhancing facts only by a preponderance of the evidence." *United States v. Scott*, 448 F.3d 1040, 1043 (8th Cir. 2006).

"[A]fter giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *Gall*, 552 U.S. at 49–50; 18 U.S.C. § 3553(a). The § 3553(a) factors include "the nature and circumstances of the offense," "the history and characteristics of the defendant," "the need for the sentence to reflect the seriousness of the offense," "the need for deterrence," "the need to protect the public from further crimes of the defendant," and "the need to avoid unwarranted disparities." 18 U.S.C. § 3553(a).

II. **THE U.S. SENTENCING GUIDELINES CALCULATIONS**

The government agrees with the PSR's Guidelines calculations, (ECF No. 439 at ¶¶ 22-31). After accounting for reductions for the safety valve, zero-point offender, and acceptance of responsibility, Jame's total offense level is 29.

3

(ECF No. 439 at ¶¶ 22-31). With a criminal history category of I, her Guidelines range is 87-108 months' imprisonment. (ECF No. 439 at ¶¶ 36, 77).

## III. THE 18 U.S.C. § 3553(a) FACTORS

The factors under 18 U.S.C. § 3553(a)—especially the nature, circumstances, and seriousness of the offense; Jame's history and characteristics; and the need to promote respect for the law—support a sentence to 87 months' imprisonment and 2 years' supervised release.

### A. NATURE, CIRCUMSTANCES, AND SERIOUSNESS OF THE OFFENSE

The nature, circumstances, and seriousness of the offense justify a sentence to 87 months' imprisonment. Opioids—especially fentanyl—have killed tens of thousands of Americans, and Jame was part of a multidefendant interstate drug trafficking conspiracy that led to what was, at the time, the largest fentanyl seizure in Minnesota history.[1] Jame was not the ringleader, but she was also not a minor or minimal participant. She did not simply receive a package to give to someone else, nor did she merely check on the status of packages. Instead, she got on a plane, flew over a thousand miles, and helped her co-defendants conceal fentanyl pills inside children's toys,

---

[1] CBS News, https://www.cbsnews.com/minnesota/news/6-charged-in-the-largest-fentanyl-bust-in-minnesota-history/ (last accessed May 8, 2025).

package them, and ship them to Minnesota. If "one pill can kill,"[2] imagine how many thousands of Minnesotans could have been killed had police not seized the packages Jame helped to assemble. The nature, circumstances, and seriousness of the offense demand a proportionate sentence.

### B. JAME'S HISTORY AND CHARACTERISTICS

Although Jame's crime is severe, her history and characteristics are overwhelmingly mitigating. Aside from this case and some traffic infractions, she has no criminal record. (ECF No. 439 at ¶¶ 33-38). Her behavior on pretrial release has not been exemplary, as she has struggled with substance abuse. (ECF No. 439 at ¶ 4). However, her substance abuse issues are likely related to past traumas. Out of respect for Jame's privacy, the government will not discuss those traumas in a public filing—the presentence report discusses them in detail, and the Court should consider those in determining the sentence. Finally, Jame, unlike other defendants, is not a U.S. citizen; instead, she is a green card holder. (ECF No. 439 at ¶ 51). Therefore, her conviction "may impact her lawful ability to remain in the United States and subject her to deportation proceedings [under] the Immigration and Nationality Act." (ECF No. 439 at ¶ 51). Given that Jame is a mother of two and has lived in the United States since she was an infant, (ECF No. 439 at ¶¶

---

[2] Drug Enforcement Administration, https://www.dea.gov/onepill (last accessed August 20, 2025).

39, 46-47), that potential deportation is another mitigating factor that the Court should consider. But while the Court must consider that mitigating evidence, it must balance that mitigation with the seriousness of Jame's crime. None of the mitigating evidence excuses Jame's conduct or her role in trafficking a staggering amount of fentanyl.

### C.  PROMOTING RESPECT FOR THE LAW

Finally, a sentence to 87 months' imprisonment will promote respect for the law. Fentanyl has created a drug epidemic the likes of which America has not seen before, and Jame was part of a conspiracy that trafficked in hundreds of thousands of deadly pills. People need to know that the law matters and that consequences exist for breaking it. A sentence to 87 months' imprisonment will send that message.

## CONCLUSION

For these reasons, the government recommends that the Court sentence Jame to 87 months' imprisonment and 2 years' supervised release.

DATE:  August 20, 2025                     JOSEPH H. THOMPSON
                                           Acting United States Attorney

                                           */s/ Campbell Warner*
                                           Campbell Warner
                                           Assistant United States Attorney